UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAWN GONZALES,<br><br>    Petitioner,<br><br>v.<br><br>SHAWN HATTON, Warden<br><br>    Respondent. | Case No. 1:17-cv-00250-MJS (HC)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE CERTIFICATE OF APPEALABILITY**<br><br>**(ECF NO. 1)**<br><br>**CLERK TO CLOSE CASE** |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus under 28 U.S.C. § 2254. Respondent is represented by Chung Mi Choi of the Office of the California Attorney General. The parties have consented to Magistrate Judge jurisdiction for all purposes pursuant to 28 U.S.C. § 636(c). (ECF Nos. 9, 12.)

Petitioner presents the following grounds for relief: (1) factual innocence, (2) ineffective assistance of counsel, and (3) interrogation without counsel. (ECF No. 1.)

For the reasons stated below, the petition will be denied.

**I.    Procedural History**

Petitioner is in the custody of the California Department of Corrections and Rehabilitation pursuant to the January 10, 2011, judgment of the Fresno County

Superior Court, imposing a determinate eight year prison term for committing a lewd or lascivious act upon a child (Lodged Doc. 2 at 467.)

Petitioner appealed the judgment, raising issues unrelated to the instant petition. (Lodged Doc. 22.) On July 10, 2015, the California Court of Appeal for the Fifth Appellate District affirmed the judgment in a reasoned decision. (Lodged Doc. 25.) Petitioner filed a petition for review in the California Supreme Court (Lodged Doc. 26), which was summarily denied on September 16, 2015 (Lodged Doc. 27).

Petitioner proceeded to file four post-conviction challenges, as follows[1]:

1. <u>Fresno County Superior Court</u>
   Filed: April 25, 2013;
   Denied: June 17, 2013;

2. <u>Fresno County Superior Court</u>
   Filed: April 1, 2016;
   Denied: May 23, 2016;

3. <u>California Court of Appeal, Fifth Appellate District</u>
   Filed: July 21, 2016;
   Denied: September 15, 2016;

4. <u>California Supreme Court</u>
   Filed: November 17, 2016;
   Denied: January 11, 2017.

(Lodged Docs. 28-35.)

Petitioner filed the instant petition on February 21, 2017. (ECF No. 1.) On June 20, 2017, Respondent filed an answer. (ECF No. 15.) On October 24, 2017, Petitioner filed a traverse. (ECF No. 18.) The matter is submitted.

## II. Factual Background

The following facts are taken from the Fifth District Court of Appeal's July 10, 2015 opinion. They and are presumed correct. 28 U.S.C. § 2254(e)(1).

> On July 19, 2011, 11–year–old Jacob, his younger sister, and his mother were staying with Barbara P. temporarily. Jacob thought of Barbara P. as a grandmother figure because for a

---

[1] Under the mailbox rule, the Court deems petitions filed on the date Petitioner handed a petition to prison authorities for mailing. <u>Houston v. Lack</u>, 487 U.S. 266, 276 (1988); <u>Campbell v. Henry</u>, 614 F.3d 1056 (9th Cir. 2010); <u>see also</u> Rule 3(d) of the Rules Governing Section 2254 Cases.

2

period of time his mother dated one of Barbara P.'s sons, Anthony. However, prior to that date, Jacob had never met Barbara P.'s son Shawn, the defendant.

That evening, before going to sleep in Anthony's bedroom, Jacob was lying on the bed watching a movie. Defendant came into the room, closed and locked the door, and asked Jacob if he could lie down. Defendant then lay down right behind Jacob, on his right side. He kissed Jacob on the back of the neck, above the collar of his shirt. While doing so, defendant told Jacob, "'God sends me little boys.'" Defendant also told Jacob he was a "'boy lover.'" Jacob was scared. Defendant put his arms around Jacob, who "couldn't really move." He held Jacob's shoulders and chest. Defendant tried to touch Jacob's "balls," but Jacob didn't let him.

Thereafter, Jacob grabbed his blanket and pillow and ran to the door. He had to unlock or unlatch the door. Jacob ran into the room his mother and sister were sharing with Barbara P. He was shocked because he thought what happened was "weird." He was upset. His mother asked him questions and learned what had happened. Barbara P. called the police.

Jacob did not recall telling a female interviewer that he could feel defendant's erect penis against his "butt cheek and . . . back," but he told the truth during that interview given after the incident. Jacob remembered things better during the interview; he tries not to think about this incident now. He did not remember telling a police officer or the interviewer that defendant tried to reach inside his pants.

Specifically, two days after the incident, Jacob met with forensic interviewer Caroline Dower. During the interview, Jacob indicated defendant had lain next to him and began to touch him. Defendant grabbed Jacob's shoulders and pulled him closer, kissed his neck, rubbed his hair, and told Jacob he was a "'boy lover'" and that "'God sends [him] little boys to play with.'" He was rubbing Jacob "everywhere." Defendant put his hand inside Jacob's gym shorts and put that hand on Jacob's thigh and "groin area." Jacob indicated defendant's hand was inside his underwear and that's when he ran for the door. Jacob indicated defendant's hand "kind of touched [his] balls." At that point, he could feel defendant's erection on part of his lower back and buttocks. Jacob was afraid.

People v. Gonzales, No. F067098, 2015 WL 4163794, at *1 (Cal. Ct. App. July 10, 2015), review denied (Sept. 16, 2015).

3

## III. Jurisdiction and Venue

Relief by way of a writ of habeas corpus extends to a prisoner under a judgment of a state court if the custody violates the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n.7 (2000). Petitioner asserts that he suffered a violation of his rights as guaranteed by the U.S. Constitution. Petitioner was convicted and sentenced in this district. 28 U.S.C. § 2241(d); 2254(a). The Court concludes that it has jurisdiction over the action and that venue is proper.

## IV. Applicable Law

The petition was filed after April 24, 1996 and is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Lindh v. Murphy, 521 U.S. 320, 326 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997). Under AEDPA, federal habeas corpus relief is available for any claim decided on the merits in state court proceedings if the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

### A. Standard of Review

A state court decision is "contrary to" federal law if it "applies a rule that contradicts governing law set forth in [Supreme Court] cases" or "confronts a set of facts that are materially indistinguishable from" a Supreme Court case, yet reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005) (citing Williams, 529 U.S. at 405-06). "AEDPA does not require state and federal courts to wait for some nearly identical factual pattern before a legal rule must be applied. . . . The statue recognizes . . . that even a general standard may be applied in an unreasonable manner" Panetti v.

Quarterman, 551 U.S. 930, 953 (2007) (citations and quotation marks omitted). The "clearly established Federal law" requirement "does not demand more than a 'principle' or 'general standard.'" Musladin v. Lamarque, 555 F.3d 830, 839 (2009). For a state decision to be an unreasonable application of clearly established federal law under § 2254(d)(1), the Supreme Court's prior decisions must provide a governing legal principle (or principles) to the issue before the state court. Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003).

A state court decision will involve an "unreasonable application of" federal law only if it is "objectively unreasonable." Id. at 75-76 (quoting Williams, 529 U.S. at 409-10); Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002). "[A]n unreasonable application of federal law is different from an incorrect application of federal law." Harrington v. Richter 562 U.S. 86, 101 (2011) (citing Williams, 529 U.S. at 410) (emphasis in original). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Id. (citing Yarborough v. Alvarado, 541 U.S. 653, 664 (2004)). Further, "[t]he more general the rule, the more leeway courts have in reading outcomes in case-by-case determinations." Id.; Renico v. Lett, 130 S. Ct. 1855, 1864 (2010). "It is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme Court]." Knowles v. Mirzayance, 556 U.S. 111, 122 (2009).

### B. Requirement of Prejudicial Error

In general, habeas relief may only be granted if the constitutional error complained of was prejudicial. That is, it must have had "a substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 121-22 (2007) (holding that the Brecht standard applies whether or not the state court recognized the error and reviewed it for harmlessness). Some constitutional errors, however, do not require a showing of

prejudice. See Arizona v. Fulminante, 499 U.S. 279, 310 (1991); United States v. Cronic, 466 U.S. 648, 659 (1984). Furthermore, claims alleging ineffective assistance of counsel are analyzed under the Strickland prejudice standard; courts do not engage in a separate analysis applying the Brecht standard. Strickland v. Washington, 466 U.S. 668 (1984); Avila v. Galaza, 297 F.3d 911, 918, n.7 (2002); Musalin v. Lamarque, 555 F.3d 830, 834 (9th Cir. 2009).

### C. Deference to State Court Decisions

"[S]tate courts are the principal forum for asserting constitutional challenges to state convictions," not merely a "preliminary step for a later federal habeas proceeding." Richter, 562 U.S. at 103. Whether the state court decision is reasoned and explained, or merely a summary denial, the approach to evaluating unreasonableness under § 2254(d) is the same: "Under § 2254(d), a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme Court]." Id. at 102. In other words:

> As a condition for obtaining habeas corpus relief from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Id. at 103. Thus, the Court may issue the writ only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents." Id. at 102.

"Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the claim rest on the same grounds." See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991). Thus, the court will "look through" a summary denial to the last reasoned decision of the state court. Id. at 804;

6

Plascencia v. Alameida, 467 F.3d 1190, 1198 (9th Cir. 2006). Furthermore, the district court may review a habeas claim, even where the state court's reasoning is entirely unexplained. Richter, 562 U.S. at 98. "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." Id. ("This Court now holds and reconfirms that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'").

**V. Review of Petition**

### A. Claim One: Factual Innocence[2]

Petitioner's claim of factual innocence is difficult to understand. His apparent contention is that counsel did not investigate or present evidence of numerous incidents, some dating as far back as the 1980s, in which Plaintiff spent time in close proximity to children or minors without engaging in lewd or lascivious acts, or engaged in such acts only consensually. He further contends that he told his half-brother that he was a "boy lover" and that "God sends him boys to love," but that these statements occurred in a non-sexual context. According to Petitioner, presentation of this evidence to the jury would have shown that he lacked the mens rea necessary to commit the offense.

#### .1. State Court Decision

The Superior Court issued the last reasoned decision on this claim and rejected it as follows:

> Second, Petitioner argues that newly discovered evidence demonstrates that he is actually innocent. Third, Petitioner contends that false evidence that is material and probative to the issue of his guilt was presented at trial.
>
> However, a petition for writ of habeas corpus must: (1) state fully and with particularity the facts on which relief is sought, and (2) include copies of reasonably available documentary evidence supporting the claims presented in the petition. (*People v. Duvall* (1995) 9 Cal.4th 464, 474.) Here, Petitioner

---

[2] Petitioner also appears to include an ineffective assistance of counsel claim in his first claim. All of his ineffective assistance claims are discussed below in part V.B.

> has failed to either specify what purportedly newly discovered evidence demonstrates that he is actually innocent or to present an adequate explanation as to what false evidence was allegedly presented at trial. Consequently, the Court finds that Petitioner has failed to state a prima facie case for habeas corpus relief with respect to his second and third contentions.

(Lod. Doc. 31 at 2-3.)

### 2. Analysis

As an initial matter, the Supreme Court has not yet recognized actual innocence as grounds for habeas relief absent an independent constitutional violation in the underlying state criminal proceedings. See Herrera v. Collins, 506 U.S. 390, 400–01 (1993); House v. Bell, 547 U.S. 518, 555 (2006) (declining to resolve the open question of whether freestanding actual innocence claims are possible). In Herrera, the Court explained that its body of "habeas jurisprudence makes clear that a claim of 'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." Id. at 404; see Schlup v. Delo, 513 U.S. 298, 313-15 (1995) (distinguishing procedural claims of innocence from substantive claims of innocence, and holding that a claim of actual innocence may be raised to avoid a procedural bar to consideration of the merits of a petitioner's constitutional claims).

Even assuming a claim of actual innocence could afford Petitioner relief, the threshold showing required would be extraordinarily high. Herrera, 506 U.S. at 417; House, 547 U.S. at 555; Carriger v. Stewart, 132 F.3d 463, 476 (9th Cir.1997) (citation omitted). At a minimum, the petitioner must "go beyond demonstrating doubt about his guilt, and must affirmatively prove that he is probably innocent." Carriger, 132 F.3d at 476 (citing Herrera, 506 U.S. at 442–44 (Blackmun, J., dissenting)). In determining whether a petitioner can make such a showing, the Supreme Court has referenced the Schlup "gateway" showing, which permits a petitioner to proceed on a procedurally barred claim by showing actual innocence. The Schlup gateway requires that the

petitioner demonstrate that "in light of new evidence, 'it is more likely than not that no reasonable juror would have found [the] petitioner guilty beyond a reasonable doubt.'" House, 547 U.S. at 537 (quoting Schlup, 513 U.S. at 327).

Here, Petitioner has made no such showing. His claims of having previously engaged in consensual relationships with minors have no bearing on the instant case, as consent is not a defense under California Penal Code § 288. People v. Soto, 51 Cal. 4th 229, 233 (2011) ("[T]he victim's consent is not a defense to the crime of lewd acts on a child under age 14 under any circumstances."). His claims of having spent time with children without molesting them, or having made apparently sexual but purportedly innocuous statements in the past, do not demonstrate that he is innocent of the offense. He has not shown that he is probably innocent or that, if presented with this evidence, no juror would have found him guilty beyond a reasonable doubt.

Additionally, the state court rejected this claim with citation to People v. Duvall, 9 Cal. 4th at 474, stating that Petitioner had failed to state a prima facie case for relief. When a state court denies a claim for failing to state a prima facie case, the absence of a prima facie case is the determination that must be reviewed for reasonableness under § 2254(d). Nunes v. Mueller, 350 F.3d 1045, 1054–55 (9th Cir. 2003).

Under California law, a citation to Duvall indicates that a petitioner has failed to state his claim with sufficient particularity for the state court to examine the merits of the claim, and/or has failed to "include copies of reasonably available documentary evidence supporting the claim, including pertinent portions of trial transcripts and affidavits or declarations." Given the meandering presentation of this claim, the Court cannot state that the state court was unreasonable in rejecting the claim on this basis.

Petitioner is therefore not entitled to relief.

**B.    Claim Two: Ineffective Assistance of Trial Counsel**

Petitioner claims his counsel was ineffective in a variety of ways that are adequately summarized below by the state court.

9

### 1. State Court Decision

The Superior Court issued the last reasoned decision on this claim, and rejected it as follows:

> Having considered the petition for writ of habeas corpus, filed on April 30, 2013, the Court finds that Petitioner has not stated a prima facie case for relief.
>
> Petitioner contends that he received ineffective assistance of counsel. Specifically, Petitioner argues that he received ineffective assistance because his trial counsel failed to confer with him, failed to subpoena or refused to subpoena witnesses favorable to him, failed to perform or refused to perform investigations critical to the defense, failed to conduct any interviews with Petitioner in October and November of 2012 and in January, February, March, and April of 2013, failed to declare or refused to declare that counsel was prejudiced or conflicted against Petitioner, called a prosecution witness on behalf of the defense, failed to object to the Deputy District Attorney's false statements, even though they made in open court during trial [sic], and failed to perform tests that would have shown that Petitioner has no signs of deviance. (Petition, p. 3.) In order to show ineffective assistance of counsel, Petitioner must allege facts showing that (1) his counsel's representation fell below an objective standard of reasonableness, and (2) that his defense suffered prejudice as a result. (*Strickland v. Washington* (1984) 466 U.S. 668, 690-92.)
>
> However, Petitioner has failed to establish a reasonable probability that, if Petitioner's counsel had conferred with him, had interviewed him in October and November 2012 and January through March 2013, had subpoenaed witnesses favorable to him, had performed investigations critical to the defense, had declared a conflict or prejudice against Petitioner, had not called a prosecution witness on behalf of the defense, objected to the false statements made in open court by the Deputy District Attorney, and had performed tests that would have shown that Petitioner has no signs of deviance, the result of the criminal proceeding against Petitioner would have been different. Therefore, the Court finds that Petitioner has not demonstrated that his defense suffered from prejudice as a result of his counsel's alleged deficient performance.

(Lod. Doc. 29 at 1-2.)

## 2. Applicable Law

The law governing ineffective assistance of counsel claims is clearly established for the purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d). Canales v. Roe, 151 F.3d 1226, 1229 (9th Cir. 1998). In a petition for writ of habeas corpus alleging ineffective assistance of counsel, the Court must consider two factors. Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994). First, the petitioner must show that counsel's performance was deficient, requiring a showing that counsel made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 687. The petitioner must show that counsel's representation fell below an objective standard of reasonableness, and must identify counsel's alleged acts or omissions that were not the result of reasonable professional judgment considering the circumstances. Id. at 688; United States v. Quintero-Barraza, 78 F.3d 1344, 1348 (9th Cir. 1995). Judicial scrutiny of counsel's performance is highly deferential. A court indulges a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Strickland, 466 U.S. at 687; see also, Harrington v. Richter, 562 U.S. 86, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011).

Second, the petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result . . . would have been different." Strickland, 466 U.S. at 694. Petitioner must show that counsel's errors were "so serious as to deprive defendant of a fair trial, a trial whose result is reliable." Id. at 687. The Court must evaluate whether the entire trial was fundamentally unfair or unreliable because of counsel's ineffectiveness. Id.; Quintero-Barraza, 78 F.3d at 1348; United States v. Palomba, 31 F.3d 1456, 1461 (9th Cir. 1994).

A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the petitioner as a result of the alleged deficiencies. Strickland, 466 U.S. at 697. Since the defendant must affirmatively prove prejudice, any

deficiency that does not result in prejudice must necessarily fail. However, there are certain instances which are legally presumed to result in prejudice, e.g., where there has been an actual or constructive denial of the assistance of counsel or where the State has interfered with counsel's assistance. Id. at 692; United States v. Cronic, 466 U.S., at 659, and n. 25 (1984).

As the Supreme Court reaffirmed in Harrington v. Richter, meeting the standard for ineffective assistance of counsel in federal habeas is extremely difficult:

> The pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a Strickland claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an unreasonable application of federal law is different from an incorrect application of federal law." Williams, *supra*, at 410, 120 S. Ct. 1495, 146 L. Ed. 2d 389. A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself.
>
> A state court's determination that a claim lacks merit precludes federal habeas relief so long as "fairminded jurists could disagree" on the correctness of the state court's decision. Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S. Ct. 2140, 158 L. Ed. 2d 938 (2004). And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." Ibid. "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." Knowles v. Mirzayance, 556 U.S. 111, 129 S. Ct. 1411, 1419, 173 L. Ed. 2d 251, 261 (2009) (internal quotation marks omitted).

Harrington v. Richter, 131 S. Ct. at 785-86.

"It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. at 786. "As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." Id. "As a condition for obtaining habeas corpus

from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 786-87.

Accordingly, even if Petitioner presents a strong case of ineffective assistance of counsel, this Court may only grant relief if no fair minded jurist could agree on the correctness of the state court decision.

### 3. Analysis

The Court concludes that a fair minded jurist could agree with the state court's determination that Petitioner failed to show that his defense was prejudiced by counsel's alleged deficiencies.

Petitioner claims that counsel failed or refused to present a "meritorious defense." This claim appears to be predicated on counsel's decision to focus on Petitioner's alleged lack of intent to commit the offense, rather than contending that the events at issue did not occur. In this regard, Petitioner makes several claims that ultimately are unpersuasive. In particular, the Court notes that none of the alleged evidence Petitioner cites to in support of this claim addresses the incident at issue. As noted above, the evidence Petitioner sought to have investigated and the witnesses he sought to have subpoenaed regarding conduct that occurred within his family and well before the incident here is unlikely to have altered the jury's verdict. The same can be said for the tangential impeachment evidence Petitioner sought to have investigated, such as school records of his siblings, the victim, and other family members. Petitioner also claims that he spent time alone with the victim on multiple occasions, contrary to the victim's testimony that he had never previously met Petitioner. A fair minded jurist could conclude that Petitioner's claim in this regard is fanciful and, in any event, that Petitioner has not shown prejudice from the failure to conduct investigation to support such

contentions. This is particularly the case where, as here, the evidence against Petitioner was overwhelming.

Based on this reasoning, the state court also was not unreasonable in determining that Petitioner had not shown prejudice from counsel's failure to consult further with Petitioner regarding this defense or conduct additional investigation.

Petitioner also contends that defense counsel failed to counter an allegedly false police report and false testimony regarding his arrest in relation to this incident. Specifically, the arresting officer stated that Petitioner was arrested behind the high school, and Petitioner claims that the location is incorrect. A fair minded jurist could conclude that this error or omission did not prejudice Petitioner, as it did not undermine any of the testimony regarding the offense itself.

Petitioner contends that he requested "touch DNA" testing be performed on the victim's shorts to show that Petitioner did not touch them, but that counsel refused. A fair minded jurist could agree that this decision was within the range of reasonable professional assistance and, in any event, Petitioner has not shown that "touch DNA" testing would have yielded a favorable result.

Petitioner's claim that defense counsel was biased against him is specious, and based primarily on his apparently unfounded belief that she is a grandmother to a child similar in age to the victim in this case.

The state court's ruling was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 131 S. Ct. at 786-87. Petitioner is not entitled to relief.

**C.    Claim Three: Miranda**

.Petitioner claims that his Fifth and Sixth Amendment rights were violated when he was interrogated without counsel. The alleged violation occurred when Petitioner was interviewed by a court-appointed doctor to determine his competency under California

14

Penal Code section 1368. The doctor later testified in the defense case at trial to support Petitioner's claim that he lacked the requisite intent to commit the offense.

### 1. State Court Decision

The state courts rejected this claim without discussion. (See Doc. 35.) Nonetheless, Petitioner still must show that "there was no reasonable basis for the state court to deny relief." Richter, 562 U.S. at 98.

### 2. Analysis

In some circumstances, questioning by a court appointed doctor can implicate an individual's Fifth and Sixth Amendment rights. Estelle v. Smith, 451 U.S. 454, 465 (1981) ("The fact that respondent's statements were uttered in the context of a psychiatric examination does not automatically remove them from the reach of the Fifth Amendment.") In Smith, the Supreme Court held that the Fifth Amendment prohibits the state from using un-Mirandized statements made during the defendant's court-ordered psychiatric evaluation to prove elements of the State's case. Smith, 451 U.S. at 465. Doing so without informing defense counsel the examination was taking place was also a denial of assistance of counsel under the Sixth Amendment. Id.

As an initial matter, it is apparent that defense counsel was aware of the psychiatric examinations and in communication with the examining doctors regarding both the scope of the examination and the scope of the examining doctor's intended testimony. There is therefore no basis to find that Petitioner's Sixth Amendment rights were violated.

Nor does the Court find a violation of Petitioner's Fifth Amendment rights. In Smith, the Supreme Court held that "[a] criminal defendant, who neither initiates a psychiatric evaluation nor attempts to introduce any psychiatric evidence, may not be compelled to respond to a psychiatrist if his statements can be used against him at a capital sentencing proceeding." Id. at 468. The instant case is factually distinct from

Smith, in that the statements made in his competency evaluation were not used against him; Petitioner himself presented the psychiatric evidence in his own defense.

Petitioner called Dr. Howard Bruce Terrell to testify as a psychiatric expert in the defense case. (Lodged Doc. 19: RT vol. X at 2038, 2040.) Dr. Terrell stated that he saw Petitioner on three occasions to determine whether Petitioner was competent to stand trial. (Id. at 2040.) Dr. Terrell also testified that Petitioner was mentally ill and fluctuated in and out of competence. (Id. at 2061-62.) Defense counsel relied on this testimony in closing to suggest that Petitioner was unable to form the requisite intent to commit the offense. (Lodged Doc. 20: RT, vol. XI at 2139.)

The Smith Court expressly stated that its holding would be different if the defendant had asserted an insanity defense and the government introduced a psychiatric examination to rebut the defendant's psychiatric evidence. See Smith, 451 U.S. at 465. "In a later case, the Supreme Court confirmed that if a defendant 'presents psychiatric evidence, then, at the very least, the prosecution may rebut this presentation with evidence from the reports of the [psychiatric] examination that the defendant requested' without violating the Fifth Amendment." Leiva v. Cate, 358 F. App'x 972, 973-74 (9th Cir. 2009) (quoting Buchanan v. Kentucky, 483 U.S. 402, 422–23 (1987).

Here, Petitioner himself introduced the psychiatric evidence in question. The state made limited reference to the evaluation solely in rebuttal. On this record, the Court concludes that the Court of Appeal's decision was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

## VI.  Certificate of Appealability

A state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of her petition, and an appeal is only allowed in certain circumstances. Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003). The federal rules governing habeas cases brought by state prisoners require a district court to either grant or deny a certificate of appealability in the order denying the habeas petition. See Rules

Governing § 2254 Case, Rule 11(a). A judge shall grant a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and the certificate must indicate which issues satisfy this standard, 28 U.S.C. § 2253(c)(3). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: [t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Here, petitioner has not made such a showing. Accordingly, a certificate of appealability will not be issued.

## VII. Conclusion and Order

Based on the foregoing, it is HEREBY ORDERED that:

1. The petition for writ of habeas corpus is DENIED with prejudice;
2. The Court declines to issue a certificate of appealability; and
3. The Clerk of Court shall close the case.

IT IS SO ORDERED.

Dated: March 20, 2018 /s/ *Michael J. Seng*
UNITED STATES MAGISTRATE JUDGE